IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURRELL ANTHONY PUCKETT,<br><br>Plaintiff,<br><br>v.<br><br>A. AGBOLI, et al.,<br><br>Defendants. | No. 2:14-CV-2776-JAM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is the unopposed motion for summary judgment filed by defendants Lynch, Dayson, Bulawin, Yaroch, Luis, and Vallar (Doc. 63), and documents in support thereof (Docs. 64, 65, and 66).[1] Also before the court is defendants' motion for an order requiring plaintiff to post security before proceeding further with this action (Doc. 67). For the reasons discussed below, the court concludes defendants' motion should be denied in part and granted in part. The court also concludes defendants' motion requiring plaintiff to post security should be denied.

/ / /

/ / /

---

[1] Defendant Abgoli, who is represented by separate counsel, joins in defendants' motion (see Doc. 71).

1

# I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's original verified complaint (Doc. 1). Plaintiff claims he was attacked by defendants Agboli, Yaroch, Lynch, Vallar, Bulawin, and Dayson following a cell extraction on November 9, 2013. See Doc. 1, pg. 4. According to plaintiff, "one of them" told plaintiff words to the effect: "For biting one of us and making us do paperwork take this." Id. Plaintiff alleges:

> . . .As Agboli starts choking me and Dayson and Ms. Lynch is pulling upon my leg irons and kicking me in my legs and Bulawin punching my right side of ribs in stomach then Yaroch hits me in the face and midsection plus upper body, as Vallor kicked me multiple times in head and face busting nose, lip and causing black eye.

Id.

Plaintiff also claims defendant Luis, a prison medical provider, "did improper 7219 lying to cover up misconduct." Id. Plaintiff also claims defendant Luis denied him medical care. According to plaintiff:

> I also want it noted I was bleeding in front of M.P. Luis and complained of crucifying (sic) pain but Luis told me due to I got them doing paperwork "fuck my medical treatment," or words to that effect, and "since I am going to file a complaint on all of them watching, fuck me."

Id. at 5.

As to defendant Lynch, plaintiff further alleges:

> M.T.A. Ms. Lynch whose [sic] a short dark-skinned black woman came to my door about on or about 5 days later after finding out about me trying to file a [sic] emergency 602 [inmate grievance] and showed my abstract of judgment to the inmates on the tier showing "three counts of rape by force, kidnaping to commit rape, attempted rape, attempted sodomy, attempted kidnap, robbery, and three counts of criminal threats."

Id.

According to plaintiff, for over five weeks following this, other inmates threatened to kill him. See id.

/ / /

/ / /

/ / /

Attached to plaintiff's complaint are declarations by inmates Dixon, Terrell, Burton, and Torres. <u>See</u> Doc. 1, Exhibits A(1), A(2), A(3), and A(4). Inmate Dixon states:

> On 11-9-13 I was woke out of my sleep by a loud comotion [sic] going on outside of my door on the tier. I went to my door to see what the comotion [sic] was about. I seen [sic] inmate Plucket [sic] being held down on the ground in cuffs with at least 5 people in yellow jumpsuits and black helmet-like headgear. Inmate Plucket [sic] was laying still not moving while one of the people in the yellow jumpsuit was yelling stop resisting while kicking and hiting [sic] Plucket [sic] in the head after I witness Plucket [sic] getting kicked and hit in the head at least 4 times. After I made a clear note of looking directly at what appeared to be limp body being held down and his hands cuffed behind his back, his legs being held down and I know there was for sure no way he could move I yelled out he's not resisting. However the beating did not stop as the person kicking him in the head was clearly out of control. After so long another person pulled the person kicking Plucket [sic] in the head back away from Plucket [sic].

<u>Id.</u> at Exhibit A(1).

Inmate Dixon also states plaintiff suffered injuries for which he was not provided medical attention "besides people looking at his wounds. . . ." <u>Id.</u> Inmate Terrell declares he was housed in his assigned cell on November 9, 2013, "[w]hen I seen [sic] six yellow suits attacking Puckett who was non-resistant." <u>Id.</u> at Exhibit A(2). Inmate Burton states he witnessed the events of November 9, 2013. <u>See id.</u> at Exhibit A(3). According to inmate Burton: "Upon the door [to plaintiff's cell] opening, I/M Puckett came out and/or tried to run out the cell" at which time "several staff then took him down to the concrete in the corridor." <u>Id.</u> Inmate Burton states plaintiff was not resisting. <u>See id.</u> Inmate Torres states plaintiff was secured in restraints after the cell extraction and was "no longer resistant after end of extraction." <u>Id.</u> at Exhibit A(4).

## II. THE PARTIES' EVIDENCE

### A. **Defendants' Evidence**

According to defendants, the following facts are undisputed:

    1.    On November 9, 2013, plaintiff was a participant in the Mental Health Services Delivery System.

    2.    On November 9, 2013, staff ordered plaintiff to remove window coverings from his cell so that a welfare check could be conducted.

3

    3. On November 9, 2013, plaintiff refused to remove window covering from his cell.

    4. Due to plaintiff's non-compliance, medical staff were ordered to enter plaintiff's cell and remove the window coverings as well as to provide plaintiff medication to subdue his agitated state.

    5. Defendants Agboli, Yaroch, Lynch, Vallar, Bulawin, and Dayson were involved in the November 9, 2013, cell extraction.

    6. Defendant Agboli and defendant Bulawin sustained injuries during the cell extraction.

    7. Plaintiff was charged with a rules violation and found guilty of battery on a peace officer in violation of 15 C.F.R. § 3005(d)(1).

    8. Plaintiff was assessed a loss of 150 days good-time credits as a result of the guilty finding.

    9. Plaintiff has not appealed or otherwise challenged the disciplinary finding of loss of good-time credits.

    10. Defendant Lynch did not disclose plaintiff's criminal offenses to anyone.

    11. Defendant Luis provided medical care to plaintiff following the cell extraction.

    12. Plaintiff has presented no evidence to support his claim defendant Luis falsified a document.

    13. Defendants Agboli, Lynch, Yaroch, Bulawin, Dayson, and Valler used the minimum amount of force necessary to extract plaintiff from his cell and there is no evidence they acted maliciously.

See Doc. 65 (Defendants' statement of undisputed facts).

Defendants' statement of undisputed facts is supported by the declaration of defendants' counsel, Natasha Langenfeld, Esq., with attached Exhibit A (defendant Luis' declaration), Exhibit B (medical report following the November 9, 2013, cell extraction), Exhibit C (defendant Lynch's declaration), Exhibit D (defendant Yaroch's declaration), Exhibit E (defendant Bulawin's declaration), Exhibit F (defendant Dayson's declaration), Exhibit G (defendant Vallar's declaration), Exhibit H (defendant Agboli's declaration), Exhibit I (declaration of Dough Stroth, the author of the rules violation report), Exhibit J (rules violation report), Exhibit K (declaration of Appeals Coordinator Duane Gorre), and Exhibit L (declaration of Senior Hearing Officer Mike Iannone). See Doc. 66.

**B.      Plaintiff's Evidence**

Plaintiff did not file an opposition to defendants' motion. The only evidence presented by plaintiff is his verified complaint and declarations attached thereto, discussed above.

# III. DISCUSSION

**A.      Defendants' Motion for Summary Judgment**

In their motion for summary judgment, defendants argue: (1) plaintiff's excessive force claims are not cognizable under Heck v. Humphrey, 512 U.S. 477 (1994); (2) plaintiff cannot prevail on his excessive force claims because the undisputed evidence shows defendants acted reasonably and not maliciously for the purpose of inflicting pain and suffering; (3) defendants are entitled to qualified immunity on plaintiff's excessive force claims;[2] (4) plaintiff cannot prevail on his safety claim against defendant Lynch relating to alleged disclosure of his commitment offenses because there is no evidence defendant Lynch acted with deliberate indifference to plaintiff's safety; and (5) plaintiff cannot prevail on his medical treatment claim against defendant Luis because there is no evidence defendant Luis acted with deliberate indifference to plaintiff's serious medical needs.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See

///

///

///

---

[2] Defendants do not argue they are entitled to qualified immunity as to plaintiff's other Eighth Amendment claims.

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

/ / /

/ / /

/ / /

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

///

///

7

1.   Excessive Force Claims

  i.   Whether Plaintiff's Excessive Force Claims are Cognizable

When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam). Thus, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, or the result of a prison disciplinary hearing resulting in imposition of a sanction affecting the overall length of confinement, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding. See Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 claim not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (concluding that § 1983 claim not cognizable because allegations of procedural defects were an attempt to challenge substantive result in parole hearing); cf. Neal, 131 F.3d at 824 (concluding that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and not to any particular parole determination); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005) (concluding that § 1983 action seeking changes in procedures for determining when an inmate is eligible for parole consideration not barred because changed procedures would hasten future parole consideration and not affect any earlier parole determination under the prior procedures).

In particular, where the claim involves the loss of good-time credits as a result of an adverse prison disciplinary finding, the claim is not cognizable. See Edwards v. Balisok, 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction of loss of good-time credits); Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997); cf.

Ramirez v. Galaza, 334 F.3d 850, 858 (9th. Cir. 2003) (holding that the favorable termination rule of <u>Heck</u> and <u>Edwards</u> does not apply to challenges to prison disciplinary hearings where the administrative sanction imposed does not affect the overall length of confinement and, thus, does not go to the heart of habeas); see also <u>Wilkerson v. Wheeler</u>, 772 F.3d 834 (9th Cir. 2014) (discussing loss of good-time credits).

According to defendants:

> Plaintiff's guilty finding of Battery on a Peace Officer is a Division "B" offense, in violation of California Code of Regulations, title 15, section 3005, subdivision (d)(1). (UMF 17.) Plaintiff was therefore assessed a 150-day forfeiture of behavioral credits (UMF 18.). Plaintiff has not overturned the RVR with a writ of habeas corpus or otherwise had the 150 days restored (UMF 20.). Thus, Plaintiff was found guilty of using force and violence in committing a battery onto another person in violation of California Code of Regulations, title 15, section 3005, subdivision (d)(1). A finding that Defendants use of force constituted excessive force would necessarily imply the invalidity of the disciplinary finding that Plaintiff was found guilty of battery on a peace officer. Thus Plaintiff's claim is barred by *Heck v. Humphrey* 512 U.S. 477, 489 (1994) (until and unless favorable termination of the conviction or sentence occurs, no cause of action under § 1983 exists).
>
> According to the RVR, Defendants had to extract Plaintiff from his cell because he refused to take down his window coverings to allow safety checks to be conducted on him, as Plaintiff was a participant in the Mental Health Delivery Services Program. The MTA's were ordered to take down Plaintiff's window coverings and administer medication to him in order to subdue his agitated state and conduct a welfare check on him. While doing this, Plaintiff injured two of the Defendants, and was subsequently found guilty of a serious offense of battery on a peace officer, and assessed a one-hundred and fifty-day credit loss.
>
> If Plaintiff's excessive force claims are vindicated in this civil suit, that result would invalidate his one-hundred and fifty-day credit-loss conviction, because these findings would be inconsistent with Plaintiff's guilty finding of committing battery. *Heck* will apply if Plaintiff never timely pursued habeas relief or other measures to expunge the prison disciplinary conviction. *Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2003); *Nonnette v. Small*, 316 F.3d 872, 877 n. 6 (9th Cir. 2002). Here, as in *Guerrero*, Plaintiff never challenged his convictions by any means prior to filing this lawsuit. *Guerrero*, 442 F.3d at 705. As a result, Plaintiff's excessive force claim is barred by *Heck v. Humphrey*. Plaintiff's Eighth Amendment claims cannot be vindicated without invalidating his RVR, and negating his one-hundred and fifty-day credit-loss conviction. Defendants are, therefore, entitled to summary judgment on Plaintiff's excessive force claim.

///

///

///

Defendants' argument is unpersuasive. Section 3005(d)(1) of Title 15 of the California Code of Regulations provides: "Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons. . . ." While the undisputed evidence supports the disciplinary finding plaintiff committed a battery on defendants Agboli and Bulawin, who were injured by plaintiff during the course of the cell extraction, the court does not agree that success on the merits of plaintiff's excessive force claims necessarily implies the invalidity of that finding. As discussed below, the primary inquiry in resolving plaintiff's excessive force claims is whether defendants were malicious and sadistic in their application of force. A determination that the defendants acted maliciously and sadistically would not necessarily mean plaintiff did not also commit a willful battery on defendants Agboli and Bulawin because the two are not mutually exclusive. It is possible for defendants to have used excessive force and for plaintiff to have committed a battery. There is nothing inherent in § 3005(d)(1) to suggest a finding that an inmate committed a battery is negated if the inmate was also subjected to excessive force. Whether defendants used excessive force or not, plaintiff was still subject to a guilty finding under § 3005(d)(1).

        ii.        <u>Whether Plaintiff Can Prevail on his Excessive Force Claims</u>

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992); <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. <u>See</u> <u>Whitley</u>, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. <u>See</u> <u>Hudson</u>, 503 U.S. at 7. The absence of an emergency situation is probative of whether force

was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

According to defendants:

> Here, Defendants are entitled to summary adjudication on plaintiff's excessive force claim because there is no evidence that any Defendant acted maliciously or intentionally to inflict injury on Plaintiff. (UMF Nos. 28 through 33). Instead, the Defendants used their training and experience to use the minimum amount of force necessary to extract plaintiff out of his cell. *Id.* As discussed supra, the undisputed evidence establishes that the cell extraction that happened was necessary, and was not done maliciously, wantonly, or in violation of Plaintiff's Eighth Amendment rights. The cell extraction would never had occurred if plaintiff had not refused several direct orders. Plaintiff, a participant in the mental health program, had covered his windows and failed to follow prison instructions for his safety and the safety of others. Inmates are required to refrain from behavior that might lead to violence or disorder or otherwise endanger another person. Cal. Code Regs., tit. 15, § 3005(a). Moreover, inmates are required to obey direct orders. Cal. Code Regs. tit. 15, § 3005(b). Thus, insubordination and resistive behavior pose a serious and legitimate security concern requiring appropriate measures to maintain prison order and discipline. *LeMaire*, 12 F.3d at 1458; *Glass v. Scribner*, 2009 WL 2579657, at *5 (E.D. Cal. Aug. 19, 2009) ("Insubordination is a matter taken very seriously within the confines of an institutional setting").
> The evidence demonstrates that Defendants' actions were reasonable and necessary, and done in good faith in the context of the prison setting. There is no evidence of malicious intent. Defendants are therefore entitled to summary adjudication as to plaintiff's claim for excessive force.

The court disagrees. The evidence provided by defendants establishes a cell extraction was necessary to conduct a wellness check on plaintiff, who was a mental health services recipient at the time, following plaintiff's refusal to obey an order to remove window coverings on his cell. Inmate Dixon, whose declaration is attached to plaintiff's complaint, suggests plaintiff was resisting at some point during the cell extraction. Specifically, inmate Dixon states he heard one of the officers tell plaintiff to stop resisting. Additionally, inmate Burton states: "Upon the door [to plaintiff's cell] opening, I/M Puckett came out and/or tried to run out the cell" at which time "several staff then took him down to the concrete in the corridor."

11

What happened next, however, is unclear. While defendants contend plaintiff continued to resist even after coming out of his cell, inmates Dixon and Burton tell a different story. Inmate Dixon states plaintiff was laying still and not moving when he was then kicked and hit in the head at least four times. Inmate Dixon further states the "beating did not stop" even after plaintiff was being held down in restraints, and that one correctional officer who was kicking plaintiff in the head had to be pulled off. Inmate Burton suggests in his declaration plaintiff was not resisting after he had been taken down to the floor. Given defendants' admission they were part of the cell extraction team, it is reasonable to infer from this evidence inmates Dixon and Burton are referring to one or more defendants in their declarations, which the court finds create a genuine dispute as to a material fact – whether defendants continued to apply force even after plaintiff stopped resisting and was on the ground in restraints.

The court finds there is a genuine dispute with respect to plaintiff's Eighth Amendment excessive force claim against those defendants who were part of the cell extraction team on November 9, 2013 – defendants Agboli, Yaroch, Lynch, Vallar, Bulawin, and Dayson.

iii. Whether Defendants are Entitled to Qualified Immunity on Plaintiff's Excessive Force Claims

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable

12

official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The court finds plaintiff's allegations show one or more defendants on the cell extraction team violated plaintiff's Eighth Amendment rights by continuing to apply unnecessary force after plaintiff had been restrained on the ground. The court also finds it was clearly established at the time that the continued application of force to a restrained and compliant inmate

violated the Eighth Amendment.  As discussed above, the court also finds there is a genuine dispute of material fact as to whether this actually occurred.  Thus, whether defendants acted reasonably and under the belief their conduct was lawful is a question which must be resolved by the trier of fact.  For these reasons, the court finds that defendants are not, on the current record, entitled to qualified immunity.  Whether a jury will find they are entitled to qualified immunity is a question for another day.

        2.       <u>Safety Claim</u>

Defendants argue plaintiff cannot prevail on his Eighth Amendment safety claim against defendant Lynch relating to disclosure of plaintiff's commitment offenses.  Under the general Eighth Amendment principles outlined above, prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250-51 (9th Cir. 1982); <u>Farmer</u>, 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  <u>See</u> <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  <u>See</u> <u>Farmer</u>, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  <u>See</u> <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  <u>See</u> <u>Farmer</u>, 511 U.S. at 844.

According to defendants:

> . . .Here, Plaintiff has not proffered any evidence to support his claims that Defendant Lynch was deliberately indifferent to him, and there is no support for his contention that Defendant Lynch failed to protect him by allegedly disclosing his criminal judgment to other inmates (UMF Nos. 23-24). Indeed, Defendant Lynch was off work for the time period that plaintiff alleges the incident occurred (UMF 22). There are not sufficient facts showing deliberate indifference and summary adjudication should be

14

granted in favor of Defendant Lynch on Plaintiff's failure to protect claim.

At the outset, the court notes defendants' statement defendant Lynch was off work during the time period in question is not supported by the evidence. According to defendants, defendant Lynch was "off work beginning November 12, 2013, for an entire month." Defendants state this fact is shown by defendant Lynch's declaration at paragraph 10. A review of defendant Lynch's declaration, contained in the record at Doc. 66, Exhibit C, reflects no paragraph 10 nor any indication defendant Lynch was not working during the time period at issue in November 2013. To the contrary, defendants specifically state defendant Lynch was on the cell extraction team on November 9, 2013.

In any event, the court nonetheless agrees the undisputed evidence establishes plaintiff cannot prevail against defendant Lynch on an Eighth Amendment safety claim arising from the alleged disclosure of plaintiff's commitment offenses to the prison population. According to defendant Lynch's uncontested declaration: "At no time following this incident, or at any time ever, did I advise any other inmate-patients of any of Puckett's criminal offenses or provide any other information that would involve a risk to an inmate." Id. at ¶ 9. Plaintiff has offered no evidence whatsoever to contradict this statement.

### 3. Medical Care Claim

Defendants argue plaintiff cannot prevail on his Eighth Amendment medical care claim against defendant Luis. Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.

See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

According to defendants:

> Here, the undisputed facts establish that Defendant Luis provided medical care to Plaintiff after the cell extraction on November 9, 2013. (UMF 25). Plaintiff has not established credible evidence to support his contention that Defendant Luis falsified medical records, nor that she refused to provide him medical care in her capacity as a Registered Nurse. (UMF Nos 26 & 27.).

The court agrees. According to defendant Luis: "On November 9, 2013, I examined and treated inmate-patient Durrell Puckett following a cell extraction in which he was physically resistive." Doc. 66, Exhibit A. Defendant's statement is corroborated by a medical record indicating plaintiff was examined and treated by defendant Luis on November 9, 2013, and defendant Luis observed a small abrasion on plaintiff's right foot which was cleaned and bandaged. Inmate Dixon, whose declaration plaintiff attaches to his complaint, is consistent with defendants' evidence. Specifically, inmate Dixon admitted plaintiff's wounds were at least

16

examined. Plaintiff has not offered any evidence to contradict defendants' version of events. For this reason, defendant Luis is entitled to summary judgment on plaintiff's medical care claim.

      **B.**     **Defendants' Motion Requiring Plaintiff to Post Security**

Defendants argue plaintiff should be required to pose security under Eastern District of California Local Rule 151(b) in the amount of $5,000.00 before being allowed to proceed further with this action because "Plaintiff has no reasonable probability of prevailing in this litigation." For the reasons outlined above, the court does not agree. Defendants' motion should be denied.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

    1.     Defendants' motion for summary judgment (Doc. 63) be granted as to plaintiff's Eighth Amendment safety and medical care claims against defendants Lynch and Luis;

    2.     Defendants' motion for summary judgment (Doc. 63) be denied as to plaintiff's Eighth Amendment excessive force claims against defendants Agboli, Yaroch, Lynch, Vallar, Bulawin, and Dayson; and

    3.     Defendants motion requiring plaintiff to post security (Doc. 67) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 4, 2019

                                      DENNIS M. COTA
                                      UNITED STATES MAGISTRATE JUDGE